# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# DOCKET NO. 3:06-cv-00108-W

| | |
|---|---|
| In Re: Martha Medlock Gallagher, Debtor. | )<br>)<br>) |
| SUSAN F. KEEVER, | )<br>)<br>) |
| Plaintiff-Appellee, | )     ORDER<br>) |
| vs. | )<br>) |
| MARTHA MEDLOCK GALLAGHER, | )<br>)<br>) |
| Defendant-Appellant. | )<br>) |

THIS MATTER is before the Court on the appeal of Martha Medlock Gallagher of the Order granting Plaintiff Susan F. Keever's Motion for Summary Judgment in the adversary proceeding in bankruptcy court (Case. No. 02-33036; Adv. Proc. No. 02-3243). For the reasons stated herein, the Court REVERSES the bankruptcy court's Order and REMANDS for further proceedings.

### STANDARD OF REVIEW

The applicable standard of review on an appeal is set forth in Bankruptcy Rule 8013, which provides: "On an appeal the district court . . . may affirm, modify or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous . . . ." The bankruptcy court's legal determinations are reviewed *de novo*. See In re Varat Enterprises, Inc., 81 F.3d 1310, 1314 (4th Cir.1996).

BACKGROUND

The facts in this case are largely undisputed. Gallagher filed a voluntary Chapter 7 petition in bankruptcy court on September 26, 2002. At the time of Gallagher's bankruptcy filing, she was defending a case brought in Gaston County Superior Court by Susan Keever ("State Court Action"). In the State Court Action, Keever sued Gallagher for alienation of affections and criminal conversation with Keever's husband. On December 26, 2002, Keever filed an adversary proceeding in bankruptcy court, wherein Keever asserted the same tort claims as those raised in the State Court Action. Keever also requested that the resulting liability be declared nondischargeable as a "willful and malicious injury" in accord with 11 U.S.C. § 523(a)(6).

The parties entered into a Consent Order on June 29, 2004, in which the parties agreed that the two actions presented similar issues and agreed to consented to Gaston County Superior Court to try the state tort claims before a jury. (See Doc. No. 14, Adv. Proceeding No. 02-03243). The parties also agreed that upon entry of any monetary judgment for Keever in the State Court Action, the parties would return to bankruptcy court to consider whether the debt was dischargeable.

Following trial, the jury returned a verdict finding that Gallagher was responsible for both alienation of affections and criminal conversation. The jury awarded Keever $50,000 in actual damages and $75,000 in punitive damages. Thereafter, Keever moved for summary judgment in the adversary proceeding, arguing that the jury's verdict in the State Court Action showed that Gallagher had wronged Keever in a "willful and malicious" manner so as to make the debt nondischargeable under 11 U.S.C. § 523(a)(6). Following a hearing, the bankruptcy court found that collateral estoppel barred relitigation of whether there was a "willful and malicious injury." Accordingly, the bankruptcy court entered an Order granting Keever's motion for summary judgment and ordering

that the debts owed to her by Gallagher were not discharged by Gallagher's bankruptcy case. Gallagher appeals.

## ANALYSIS

The gravamen of Gallagher's appeal is that the jury in the State Court Action was never asked and therefore never found that Gallagher intended to harm Keever, which Gallagher contends is a requirement for nondischargeability under 11 U.S.C. § 523(a). Therefore, according to Gallagher, the bankruptcy court erred in its application and analysis of collateral estoppel. For the reasons stated in the Supreme Court case of Kawaauhau v. Geiger, 523 U.S. 57 (1998), and the Fourth Circuit case of In Re Duncan, 448 F.3d 725 (2006), the Court agrees with Gallagher's argument.

Under 11 U.S.C. § 523(a), "A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt . . . (6) for *willful and malicious injury* by the debtor to another entity or to the property of another entity. . . ." (Emphasis added). In Geiger, the Supreme Court explained the scope of the "willful and malicious injury" exception in 11 U.S.C. § 523(a)(6).

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, i.e., "reckless" or "negligent," to modify "injury." Moreover, as the Eighth Circuit observed, the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the consequences of an act," not simply "the act itself." Restatement (Second) of Torts § 8A, Comment a, p. 15 (1964) (emphasis added).

Id. at 61-62.

Although Geigher is somewhat distinguishable because it involved allegations of negligence, as opposed to an intentional tort as in the case at bar, the Fourth Circuit recently applied the principles in and holding of Geigher in a case involving an intentional tort. See In Re Duncan, 448 F.3d 725 (2006).[1] In Duncan, a child died as a result of assault and subsequent drowning in a bathtub while in her adopted mother's care. Following a jury trial in an action brought by the administrator of the child's estate, a state court judgment for wrongful death was entered against the mother. The mother subsequently filed a petition for bankruptcy under Chapter 7. The administrator of the child's estate filed an adversary proceeding to contest the dischargeability of the judgment in the debtor-mother's bankruptcy proceeding. The district court held that collateral estoppel barred relitigation of the factual issues, and therefore, the debt was nondischargeable. On appeal, the Fourth Circuit reversed. Relying heavily on Geigher, the appeals court noted that in order for collateral estoppel to apply, the issue of whether the debtor-mother intended to injure the child (as opposed to engaging in an intentional act that injured the child) must have been litigated in and necessary to the state court proceeding.[2] Id. at 729.

---

[1] The Court recognizes that Duncan was decided after entry of the bankruptcy court's Order in this case and following briefing of the appeal to this Court, but it is, nonetheless, dispositive to this appeal.

[2] The Duncan Court applied Virginia state law on collateral estoppel. Central to the Court's ruling were the requirements that: "the factual issue to be precluded must have been actually litigated in the prior proceeding;" and "the factual issue to be precluded must have been essential to the judgment in the prior proceeding." Id. At 728 (citing Trans Dulles Center, Inc. v. Sharma, 252 Va. 20, 223-23, 472 S.E.2d 274, 275 (1996). These elements parallel the requirements under North Carolina law that in order for collateral estoppel to bar a party's subsequent claim: (1) the issues to be concluded must be the same as those involved in the prior action; (2) the issues must have been raised and actually litigated in the prior action; (3) the issues must have been material and relevant to the disposition of the prior action; and (4) the determination made of those issues in the prior action must have been necessary and essential to the resulting judgment." McCallum v. N.C. Coop. Extension Serv., 142 N.C.App. 48, 54, 542 S.E.2d 227, 233 (quoting King v. Grindstaff, 284 N.C. 348, 358, 200 S.E.2d 799, 806 (1973)), appeal dismissed and disc. rev. denied, 353 N.C. 452, 548 S.E.2d 527 (2001). Accordingly, Virginia and North Carolina law on collateral estoppel are sufficiently similar such that the reasoning in and holding of Duncan is controlling in this case.

> As the Supreme Court instructs in Geiger, § 523(a)(6) applies only to "acts done with the actual intent to cause injury." Section 523(a)(6) is not satisfied by negligent, grossly negligent or reckless conduct. Moreover, the mere fact that a debtor engaged in an intentional act does not necessarily mean that he acted willfully and maliciously for purposes of § 523(a)(6). Nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury.

Duncan, 448 F.3d at 728 (internal citations omitted).

The Duncan court carefully considered the elements of the wrongful death claim and distinguished the term "willful and wanton conduct" (as an element of the wrongful death claim) from that of "willful and wanton injury" (as required under 11 U.S.C. § 523(a)(6)). Proof of one, according to the court, is not necessarily proof of the other. Accordingly, the wrongful death judgment did not involve an identical issue to that before the bankruptcy judge, and collateral estoppel did not apply. See id.

Turning to the case at bar, in order for a jury to award damages on an alienation of affection claim, it must first find: (1) that there was a marriage with love and affection; (2) that the love and affection was alienated and destroyed; and (3) that the wrongful and malicious *acts* of defendant produced the loss of love and affection." Ward v. Beaton, 141 N.C. App. 44, 47, 539 S.E.2d 30, 33 (2000) (emphasis added) (citing Hankins v. Hankins, 202 N.C. 358, 361, 162 S.E. 766, 767 (1932)). Punitive damages are recoverable in an action for alienation of affections:

> "where the defendant's *conduct* was willful, aggravated, malicious, or of a wanton character." To establish entitlement to punitive damages for alienation of affections, the plaintiff must present "evidence of circumstances of aggravation in addition to the malice implied by law from the conduct of defendant in alienating the affections between the spouses which was necessary to sustain a recovery of compensatory damages."

Hutelmyer v. Cox, 133 N.C. App. 364, 371, 514 S.E.2d 554, 559 (emphasis added) (quoting Chappell v. Redding, 67 N.C.App. 397, 403, 313 S.E.2d 239, 243 (1984)), disc. rev. denied, 351

N.C. 104, 541 S.E.2d 146 (1999).

Thus, both the substantive claim and punitive damages issues presented in the State Court Action considered the willfulness and maliciousness of the wrongdoer's *conduct*, and not whether there was a "willful and malicious injury." Under Duncan, this is insufficient to show an identity of issues in the State Court Action with the issue of "willful and malicious injury" under 523(a)(6).

The North Carolina Pattern Jury Instructions further indicate that collateral estoppel does not apply in this case. The jury instructions do not necessarily require the jury to determine whether the wrongdoer maliciously intended to injure the marriage relationship. The Pattern Jury Instructions for alienation of affections define malicious conduct as conduct that is "intended to *or is recklessly indifferent* to the likelihood that it will destroy or diminish the genuine marital relationship." N.C.P.I. Civil 800.20, Alienation of Affections (emphasis added). These instructions provide an alternative basis for which a jury could find malicious conduct based on "reckless indifference." As noted in Duncan, jury instructions that provide an alternative basis to support a finding of malice is insufficient to establish, for collateral estoppel purposes, a "malicious injury" under § 523(a)(6). 448 F.3d at 729. A finding of "reckless indifference" is a "lower bar" than that for a finding of "willful and malicious injury" under § 523(a)(6). Id. Therefore, because the record contains no indication of which of these two standards the jury in the State Court Action employed, the Court is unable to conclude that the issue of "willful and malicious injury" was "actually litigated" in and "necessary and essential to" the judgment entered in the State Court Action. See McCallum, 142 N.C. App. at 54, 542 S.E.2d at 233.

Furthermore, the various pattern jury instructions on punitive damages offer alternative reasons to support such an award, including "actual malice, oppression, a gross and willful wrong,

insult, rudeness, indignity, or a reckless or wanton disregard of the plaintiff's rights," N.C.P.I.-Civil 810.90, or "maliciousness, willful or wanton injury, or gross negligence," N.C.P.I.-Civil 810.91. For the reasons in Duncan, these alternative findings do not satisfy the requirement that the "willful and malicious injury" issue was "actually litigated" and "necessary and essential to" the judgment in the State Court Action.  See Duncan, 448 F.3d 730.

The Consent Order signed by the parties does not change the result.  The parties agreed to a similarity of issues; however, the consent order stopped short of agreeing that *all* issues were presented in and could be resolved by judgment in the State Court Action.  Although the State Court Action resolved much of the factual disputes, and significantly, the question of damages, the parties agreed that if the state action resulted in a monetary judgment for Keever, the parties would return to bankruptcy court for a determination of whether the debt was dischargeable.  (See Doc. No. 14, Adv. Proceeding No. 02-03243).  Resolution of the question of whether Gallagher "willfully and maliciously" injured the marital relationship, as defined by § 523(a)(6) and explained in Geiger and Duncan, was not before the state court, but is now appropriate to be resolved by the bankruptcy court in order to determine whether the debt is dischargeable.

### Conclusion

In sum, neither the alienation of affections claim nor the punitive damages award in the State Court Action specifically involved and clearly decided the issue of whether Gallagher maliciously intended to injure the Keever's marital relationship.  Because issues must be identical for collateral estoppel to apply, and such identity is lacking here, the judgment in the State Court Action does not support application of collateral estoppel to Keever's nondischargeability claim under 11 U.S.C. § 523(a)(6).

IT IS, THEREFORE, ORDERED that the Order entered by the bankruptcy court is **REVERSED**, and this matter is **REMANDED** for further proceedings consistent with this Order. To the extent the parties agree or have waived resolution of whether the injury was "willful," that issue is no longer before the Court.

IT IS SO ORDERED.

Signed: March 13, 2007

Frank D. Whitney
United States District Judge